PORTO RICO COAL COMPANY, PLAINTIFF AND APPELLANT, *v.*
SOBRINOS DE EZQUIAGA, DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan in an Action for Acknowledgment of Servitude.

No. 2252.—Decided June 17, 1921.

SERVITUDE — RAILROAD — MODIFICATION OF SERVITUDE. — A third person who purchases a property subject to a servitude recorded in the registry of property is bound only by the terms of that record and in the particular case of a servitude to establish a branch railroad line such a purchaser is not bound to inspect a railroad track in the immediate vicinity in order to deduce from the presence of a switch in the said track the existence of a modification of the servitude.

The facts are stated in the opinion.

*Messrs. Chas. Hartzell* and *F. Ramírez de Arellano* for the appellant.

*Mr. E. Acuña* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant acquired a certain property subject to a pre-

dial servitude of record in the registry of property and proceeded to erect a metal tank and other structures thereon.

Plaintiff thereupon brought suit to establish the existence of and restrain encroachment upon a servitude assumed apparently to be in substance the same as that recorded in the registry, but described as having been modified in regard to the location thereof upon the ground by virtue of a subsequent understanding or agreement between the parties to the original contract.

A demurrer for want of facts sufficient to constitute a cause of action was sustained by the court below and plaintiff appeals from a judgment of dismissal.

The averments pertinent to the question before us are as follows:

"Fifth: That by deed No. 223 dated December 3, 1912, José D. Riera y Cifuentes, Wenceslao Bosch y Puig and Luis Sánchez Morales, former owners of the property now belonging to the plaintiff, executed a contract of segregation, sale and mortgage of real property and creation of a servitude by virtue of which contract the former sold to the partnership of Carlos Cid & Company the property described in the fourth count of this complaint which they segregated from the property described in the third count of the same complaint and at the same time created respective servitudes in favor of both properties, the said servitudes having been recorded respectively in favor of both properties in the registry of property at folios 233 and 190 of volumes 5th and 6th of Puerta de Tierra.

"Sixth: That the servitude created by the said deed upon the property of the defendant and in favor of the property belonging to the plaintiff was made to appear in the said deed and in the registry of property as follows:

" 'Carlos Cid y Gallego, in his capacity of manager of the partnership of Carlos Cid & Company, created a predial, positive and discontinuous servitude upon the property of one thousand and seven hundred meters described in the first paragraph of this contract.

" 'The said servitude shall consist in the construction on the servient tenement of a branch track connecting this with the main track of the American Railroad Company of Porto Rico to be used

by both properties and to extend along the entire eastern boundary of the servient tenement and end at the southeastern boundary of the said property.

"The parties agree that the servitudes created in the two foregoing stipulations shall have the character of perpetual servitudes in consideration of the mutual benefit resulting therefrom by reason of their creation.'

"Seventh: That the servitude created as aforesaid was modified by the same parties who created it in this, that the branch track which according to the deed should run along the eastern boundary of the servient tenement and terminate at the southeastern boundary shall be located some meters towards the west and with that end in view there was placed on the main line of the American Railroad Company, which runs from east to west, a switch commonly known as a 'frog' which in its location marked the point of departure of the track constituting the modified servitude and in its curvature the direction and radius of the arc to be described for the purpose of entering the dominant tenement and approaching the eastern boundary of San Andrés Street or near the said street.

"Eighth: That notwithstanding the aforesaid servitude thus modified and without the consent and contrary to the expressed wishes of the former owners of the dominant tenement the defendant, represented by José D. Riera, constructed buildings such as a metal tank and a cement round house on the servient tenement, thus obstructing the passage and making useless the said servitude or preventing the exercise and enjoyment of the plaintiffs and therefore encroaching upon the place which was expressly reserved for the servitude modified as aforesaid.

"Ninth: That the former owners of the dominant tenement, by their representatives, admonished the defendant not to construct or continue to construct the said buildings nor in any way to interfere with their servitudes now belonging to the plaintiff corporation and created upon the property of the defendant, and also to leave free and clear the passage through the servient tenement for the exercise of the modified servitude on the place and in the manner agreed on, the said defendant having refused and continued the works undertaken which are now practically finished."

Neither obstruction nor interference with the full enjoyment of the easement as originally created, 'nor record of

the subsequent agreement, nor actual knowledge thereof, is charged. On the face of the complaint defendant is a stranger to the new arrangement unless the mere installation and visible existence of a "frog" in the track of the American Railroad Company at some unknown distance from the point of intersection contemplated by the original contract is sufficient notice of the provisions contained in the subsequent unrecorded agreement, whereby the proposed spur track would be laid, not along the eastern boundary of the servient tenement as provided in the recorded instrument, but would traverse the property of defendant along a line to be drawn "some meters to the west" of such eastern boundary. Appellant cites no authority, and we are aware of none, that would oblige defendant to observe or to overlook at their peril the existence of a frog in the main line of a railway company not a party to the contract establishing the servitude, no part of the railroad right of way being included within either of the parcels of land to be affected by such easement, as indicating not only the point of departure of a branch line to be built over the lands of defendant, but also the arc to be described and therefore, through the medium of a mathematical calculation or actual survey, the probable location upon the ground of such new track when laid,—these indications being contrary to the express provisions of the only agreement in regard to a servitude of which defendant had any knowledge. The theory of the complaint and of the present appeal would impose upon all purchasers of property subject to a servitude of record the obligation of inspecting railroad tracks in the immediate vicinity for the purpose of discovering the existence of frogs which might or might not be used as the starting point for a track to be laid upon his land over a route other than that specified in the recorded instrument creating a servitude, and of investigating the purpose and significance of such a device when found. Should this view of the matter prevail the acquisi-

tion of any property subject to a recorded servitude not already established upon the ground and in actual use would be fraught with danger and the usefulness of the registry of property as a protection to innocent purchasers of real estate would be greatly impaired.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.